IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE  DIVISION

| | |
|---|---|
| Deidrick Ladonn Smith, | Civil Action No.  6:06-3602-HMH-BHH |
| Plaintiff, | |
| vs. | **REPORT AND RECOMMENDATION** |
| | **OF MAGISTRATE JUDGE** |
| Faurecia Interior Systems, USA, | |
| Defendant. | |

This matter is before the Court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.   The plaintiff has pled a claim for discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended.   The plaintiff alleges that the defendant discriminated against him on account of his race, when it rejected his application for a promotion to a Process Technician position.   He further contends that the defendant's proffered justifications for not promoting him are subterfuges for actual unlawful motives.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## FACTS PRESENTED

The defendant is a Tier One Supplier of parts to automobile manufacturers and maintains a production facility in Fountain Inn, South Carolina.  (Bell Decl. ¶ 5.)   The

plaintiff, a black male, began his employment with the defendant in 1995. (Smith Dep. at 72-73.)  Later that year, the plaintiff became a Production Associate in the defendant's Vac-Form department. (Smith Dep. at 82.)  Throughout his employment, the plaintiff was employed in the Vac-Form department and was eventually promoted to the position of Operator, working on the GMX (Saturn) line.  (Smith Dep. at 97-98.)  During 2005-06, Smith was supervised by Jim Anderson, the Vac-Form department Supervisor.  (Smith Dep. at 82-83.)  The plaintiff's wife also worked for the defendant as a GAP (Team) Leader in the Vac-Form department on the E-70 line, which produced parts for BMW's X-5 model. (Smith Dep. at 15, 186; Denton Decl. ¶¶ 5-6.)

On June 15, 2006, the defendant posted an internal job listing for two (2) Process Technician positions. (Smith Dep. at 127; Denton Decl. ¶ 10.)  In response to the job posting for the Process Technician positions, the defendant received six (6) applications. (Denton Decl. ¶ 11.)  Included within the applicant pool were the plaintiff, Jacob Clark (Caucasian), a Process Technician on the Paint Line, and Jimmy Grimes (Caucasian), a temporary employee who was assigned to the defendant's Maintenance department. (Smith Dep. at 128-129, 132-133; Clark Dep. at 6-7; Grimes Dep. at 15-16; Denton Decl. ¶ 12.) The defendant also received applications from Kevin Smith (Caucasian and Team (GAP) Leader), Chad Pace (Caucasian); Libardo Tabores (Hispanic), and Antonio Morales (Hispanic). (Denton Decl. ¶ 13; Smith Dep. at 141.)

Anderson, the Vac-Form Department Supervisor, along with Jim Mulkey, the Maintenance Department Supervisor, interviewed the candidates. (Denton Decl. ¶ 15;

Grimes Dep. at 15; Clark Dep. at 12; Smith Dep. at 147-148.)  There is some dispute between the parties as to when in the process the plaintiff was actually interviewed.  The defendant contends that the plaintiff was not at work because of a shutdown, when Anderson and Mulkey began interviewing the candidates.  (Denton Decl. ¶ 16; Smith Dep. at 167-168.)  The plaintiff argues that, notwithstanding the shutdown and a half-day vacation, he was at all times available to be interviewed but that the defendant did not, in fact, interview him until after it had already made a decision about who would get the promotion.  As discussed in greater detail below, the Court does not find the dispute material.

After Anderson interviewed the plaintiff, he presented the findings from the interviews he and Mulkey had conducted to Keith Denton, Faurecia's Human Resources Manager at the time. (Denton Decl. ¶ 22).  The defendant represents that Denton decided that Clark's and Grimes' qualifications and experience best suited the defendant's needs. (Denton Decl. ¶ 23).

Anderson informed the plaintiff that he was not selected for the position because Grimes and Clark were more qualified and because placing the plaintiff in that position would have violated Faurecia's Employment of Relatives Policy, insofar as his wife worked as a Gap Leader (Team Leader) in the E-70 Vac-Form Department. (Smith Dep. at 246; Denton Decl. ¶ 25.)

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that

4

specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

The plaintiff contends that he was discriminated against on account of his race to the extent the defendant denied his application for a Process Technician position, in July of 2006.  The plaintiff alleges that the defendant promoted Jacob Clark and Jimmy Grimes,

5

allegedly less qualified white employees, instead.

**I.    METHODS OF PROOF**

As the Fourth Circuit has reiterated, in the time since *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), the plaintiff may avert the defendant's summary judgment motion "through two avenues of proof." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (quoting *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (emphasis added).  A plaintiff can survive a motion for summary judgment by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment decision. *Diamond*, 416 F.3d at 318. Pursuant to the 1991 Act, the impermissible factor need not have been the sole factor. As long as it motivated the adverse action, the plaintiff can establish an unlawful employment practice. *See* 42 U.S.C.A. § 2000e-2(m). Alternatively, a plaintiff may "proceed under [the *McDonnell Douglas* ] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285.

**A.    Direct Evidence**

The plaintiff does not attempt to establish his discrimination claim using direct or circumstantial evidence but relies exclusively on the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting proof scheme.  It should be noted, however, that the

plaintiff offers remarks, which he contends evidence the discriminatory animus of decisionmakers in this case.  Specifically he alleges that his supervisor Jim Anderson, who also interviewed him for the Process Technician position, made comments, during his time as supervisor, about "how white people or a white man can do a job better than a black man or white men, speaking of himself, could get more women, black women, than [sic] some black men," and that Anderson told another employee that "you better be glad you've got a big, black brother helping you out."  (Smith Dep. at 176-77).

These statements, however, are not direct evidence because they relate neither to the plaintiff, specifically, nor the decision to deny him the promotion.  Such remarks may constitute direct evidence only where they are related to the employment decision in question and are not stray or isolated.  *McCray v. Pee Dee Regional Transp. Authority*, 2008 WL 343014, at *4 (4th Cir. February 06, 2008).   The plaintiff's evidence must clearly indicate a discriminatory motive and illustrate a nexus between that motive and the adverse employment action.  *Id*.  Neither elements are present in the statements proffered and the plaintiff does not contend otherwise.   Moreover, direct evidence of discrimination does not include "statements by nondecisionmakers," and "statements by decisionmakers unrelated to the decisional process itself."  *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277 (4th Cir.2004).

### B.    Decisionmaker

To that end, these are not remarks of a decisionmaker.  Notwithstanding Anderson's role in the promotion process as an interviewer, the plaintiff has not produced any evidence

7

that Anderson was the actual decisionmaker. An employer will not be liable under Title VII for the decisions of an employee simply because they have supervisory or managerial authority. Rather, Title VII only imposes liability if the retaliatory animus of an actual decisionmaker – i.e., "the person who in reality makes the decision" – motivated the contested employment action. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 290-291 (4th Cir.2004). The Fourth Circuit concluded in *Hill*:

> In sum, to survive summary judgment, an aggrieved employee who rests a discrimination claim under Title VII . . . upon discriminatory motivations of a subordinate employee must come forward with sufficient evidence that the subordinate employee possessed such authority ***as to be viewed as the one principally responsible for the decision of the actual decisionmaker for the employer.***

*Id*. at 291. The defendant, in contrast, has submitted evidence that Keith Denton, Faurecia's Human Resources Manager, made the decision not to promote the plaintiff. (Denton Decl. ¶¶ 23, 30.) The plaintiff has produced no evidence to the contrary. He certainly has not come forward with evidence from which a reasonable jury could conclude that Anderson should be "viewed as the one principally responsible for the decision of the actual decisionmaker for the employer." *Hill*, 354 F.3d at 291. It is undisputed that the plaintiff declined to take the deposition of Denton, who was identified by the defendant as early as the defendant's answers to Rule 26.03 interrogatories [Doc. 32].

## II. *MCDONNELL DOUGLAS* BURDEN SHIFTING SCHEME

As stated, the plaintiff has relied exclusively on the burden-shifting scheme to make his case. Under *McDonnell Douglas*, an employee must first prove a *prima facie* case of

discrimination by a preponderance of the evidence. If he succeeds, the employer has an opportunity to present a legitimate, nondiscriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the *prima facie* case drops out of the picture, and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802-05.

In *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), the Supreme Court reiterated that evidence of pretext, combined with the plaintiff's *prima facie* case, does not compel judgment for the plaintiff, because " [i]t is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination." *Id.* at 147 (citation omitted). However, the Court also stated that, under the appropriate circumstances, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* It is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination. *See id.* at 147-48. Pretext analysis does not convert Title VII into a vehicle for challenging unfair--but nondiscriminatory--employment decisions. *Holder v. City of Raleigh*, 867 F.2d 823, 828 (4th Cir.1989). Conclusory allegations, without more, are insufficient to preclude the granting of the defendant's summary judgment motion. *Ross*, 759 F.2d at 365.

A.    *Prima Facie* **Case**

To establish his *prima facie* case of a discriminatory failure to promote, the plaintiff must show: (1) that he is a member of a protected class; (2) that he applied for the position in question; (3) that he was qualified for that position; and (4) that the defendant rejected his application under circumstances that give rise to an inference of unlawful discrimination. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004); *Bryant v. Aiken Reg. Med. Ctrs., Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003); *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir.1995).

The defendant rejects that the plaintiff can establish either that he was qualified for the position or that he was rejected under circumstances that give rise to an inference of unlawful discrimination.

As to whether the plaintiff was qualified for the position the Court finds that genuine issues of fact remain.  Principally, the plaintiff has submitted a note prepared by Anderson, his supervisor and interviewer, that expressly indicates his opinion that the plaintiff was qualified for the process technician job but was simply not as qualified as other applicants: "I advised him that he's a good candidate for the job but that he has not had all the experience as the other candidates but with training he might be able to do it."  (Pl. Resp. Attach. 22.)  Anderson also expressed his opinion in the note that the plaintiff would be qualified to work in the same type of position, as a Process Technician, in the "hotpress" department.  *Id*.  A reasonable jury could conclude from these statements that the plaintiff was, at least, minimally qualified for the Process Technician position, for which he applied.

The defendant has not addressed this evidence.  Instead, the defendant has simply rejected that the plaintiff can rely on his own self-evaluation or the perception of co-workers that he was qualified for the position.   The plaintiff has offered his own affidavit and the affidavits of co-workers as to his qualifications for the job.  (Pl. Resp. Exs. 16-22.)  It is true that such evidence is of limited or no probative value concerning whether he was in fact qualified for the position.  *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 964, 960-61 (4th Cir. 1996).  The Anderson note, however, was the expressed opinion of the plaintiff's supervisor and the individual tasked with interviewing candidates for the job.  While there is no evidence from which a jury could conclude that Anderson was the actual decisionmaker, Anderson's opinion is certainly enough evidence to survive summary judgment on the third element of his *prima facie* case.

As to the fourth element of the plaintiff's *prima facie* case, the defendant contends that the plaintiff has not created a genuine issue as to any circumstances giving rise to an inference of unlawful discrimination.  The Fourth Circuit, however, has emphasized that it is a "relatively easy test" to show that a qualified applicant, "'was rejected under circumstances which give rise to an inference of unlawful discrimination.'" *Evans*, 80 F.3d at 960.  (quoting *Young v. Lehman*, 748 F.2d 194, 197 (4th Cir. 1985).  Specifically, to satisfy the fourth prong the plaintiff "need only show that the position was filled by a white applicant, as he has done." *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994); *see also Blue v. United States Dep't of the Army*, 914 F.2d 525, 537 (4thCir.1990).  It is undisputed that

11

the Process Technician position was filled by two white males, Jacob Clark and Jimmy Grimes. (Denton Decl. ¶ 30.) Accordingly, the plaintiff has created genuine issues of fact as to a *prima facie* case.

### B.    Legitimate Non-Discriminatory Reason

The defendant has met its burden of production by generally identifying the following legitimate, non-discriminatory reason for rejecting the plaintiff's application for the Process Technician position: that Clark and Grimes were better qualified than the plaintiff for the position. "Job performance and relative employee qualifications [are] widely recognized as valid, non-discriminatory bas[i]s for any adverse employment decision." *Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 960 (4th Cir. 1996); *see also Mackey v. Shalala*, 360 F.3d 463, 468 (4th Cir. 2004); *Karpel v. Inova Health System Services*, 134 F.3d 1222, 1229 (4th Cir. 1998) ("Inova's termination of Karpel was based on her unsatisfactory job performance, including, her tardiness and failure to complete her monthly summaries.")

The defendant has also indicated that promoting the plaintiff to the Process Technician job would have violated the defendant's Employment of Relatives Policy ("Relatives Policy"). That policy prohibits employees from working in positions where they would be "working directly for or supervising their relative." (Smith Dep. at 78-79, Ex. 7 at 000401-000402.) The defendant has stated that the plaintiff's wife is a GAP Leader and would fill-in as the Process Technician's acting supervisor in the event that the regular supervisor was absent. (Denton Decl. ¶ 26.)    Facially neutral employment policies can

12

constitute legitimate, nondiscriminatory reasons to deny a promotion. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003) (finding that a neutral no-rehire policy satisfied burden to produce legitimate nondiscriminatory reason for refusing to rehire plaintiff). The plaintiff has not challenged the propriety of this policy, although, as will be discussed, he contends that the defendant's allegedly inconsistent application of it evidences pretext in this case.

### C.    Pretext

Because the defendant has proffered legitimate, non-discriminatory reasons for its actions, the plaintiff bears the burden of demonstrating that the real reason for denial of the promotion was, in fact, an unlawful one. *See Reeves*, 530 U.S. at 142-43.   As is most common, the plaintiff attempts to satisfy this burden by suggesting that the defendant's proffered reasons are pretextual or false. *See id.* at 144.  Specifically, he claims that his qualifications were superior to Grimes'[1] and that the defendant has made inconsistent application of its policy against spouses supervising one another, such that the defendant's enforcement of it in regards to him is not credible.

It is true, that "qualifications evidence" may suffice, at least in some circumstances, to show pretext.   *See Ash v. Tyson Foods, Inc.*, 126 S. Ct. 1195, 1197  (2006).  At this time, however, the United States Supreme Court has left the determination of the standard

---

[1]  The plaintiff originally claimed that his qualifications for the job were superior to both Clark and Grimes.  On summary judgment, he makes no such argument and focuses exclusively on his qualifications relative to Grimes.  Accordingly, the Court takes the plaintiff's position as an abandonment of any belief that he was demonstrably better qualified than Clark.

by which the probative value of relative qualifications is to be considered to the circuit courts of appeals, respectively. *Id*. at 1198.

The Fourth Circuit has expressly instructed that, when comparing the relative job qualifications of two candidates, if "the plaintiff has made a strong showing that his qualifications are ***demonstrably superior***, he has provided sufficient evidence that the employer's explanation may be pretext for discrimination." *Heiko v. Columbo Savings Bank, F.S.B.*, 434 F.3d 249, 261-62 (4th Cir. 2006). But where "a plaintiff asserts job qualifications that ***are similar or only slightly superior*** to those of the person eventually selected, the promotion decision remains vested in the sound business judgment of the employer." *Heiko, 434 F.3d at 261* (citing *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 649 & n.4 (4th Cir.2002) (emphasis added); *Evans*, 80 F.3d at 960).

The Court, therefore, will analyze evidence of the plaintiff's and Grimes' relative qualifications to determine whether a genuine issue of fact exists, such that a jury could conclude that the plaintiff had demonstrably superior qualifications than Grimes.

It is helpful to first quote from the relevant job posting in regards to the qualifications of a Process Technician:

> Associate Degree in Engineering (or related experience); Previous manufacturing experience; Strong problem solving skills; Computer skills (Windows, Access, Excel, Work, Auto CAD, Project); Automotive experience a plus; Good verbal and written communication skills.

(Smith Dep. at 125, Ex. 17.)

14

### 1.    *The plaintiff's qualifications*

The plaintiff has produced evidence of the following educational and professional

qualifications:

- graduated High School
- attended college but did not graduate
- eleven years of automotive experience - Vac-Form department
- performed Gap Leader responsibilities in that department for at least eight weeks
- can operate every workstation in the vac form department
- learned training methods, took time study classes
- excellent skills on the kiefel, which is the primary machine run in the vac form department
- regularly used for troubleshooting in department
- at manager's request, has "run" service parts on kiefel machine a task normally done by a process technician or by a process manager

*(See generally* Pl. Aff. Attach. 16 to Resp. Summ. J; Smith Dep. at 82, 97-98.)   The

defendant, while summarily claiming that it does not, never really explains why the

plaintiff's experience fails to meet the requirements of the position as detailed by the job

posting. (Def. Summ. J. at 6, 14.) Instead, the defendant repeatedly emphasizes that the

plaintiff was unaware of the factors considered by the defendant or the weight given to

those considerations.  *Id*. at 6, 14, 17.  The defendant highlights this deposition testimony

of the plaintiff:

> Q: You don't know what factors were used to determine which candidates would be selected?
> A: No, sir, I don't.
> …
> Q: Do you know which factors the decision makers considered important?
> A: No, sir, I don't.
> Q: Do you know how they rated the qualifications of the candidates?
> A: No, sir, I don't.

(Smith Dep. at 140.)  The Court finds this evidence somewhat overstated.  Of course the

plaintiff would be unaware of the criteria and qualifications that the decisionmakers privately prioritize. And, certainly it is within the defendant's business judgment expertise to so prioritize. *See Heiko*, 434 F.3d at 261. But, the Court rejects that such an admission disqualifies the plaintiff from having any perspective on the qualifications for the job or a jury from comparing the posted qualifications with those of the plaintiff and Grimes. This is particularly true considering the fact that the defendant has not produced any evidence explaining how it differently weighted the qualifications and how Grimes fared more favorably than the plaintiff in light of them. It is not the Court's job to decide the degree of the plaintiff's qualifications for the position. There is some evidence of his qualifications and only the jury can measure it.

### 2.    *Jimmy Grimes' Qualifications*

The defendant has put forward the following evidence of Grimes' qualifications for the Process Technician position:

- began his work career during high school, during which time he worked for his father's commercial electrical business.
- continued to work for his father's electrical business until it closed.
- worked for various construction companies doing electrical work on projects in Florida, Georgia, Illinois, North Carolina, Pennsylvania, South Carolina, and Tennessee
- first job in a manufacturing plant was in 1989, with Startex Mills in Startex, South Carolina, where he worked as a maintenance mechanic
- In 1994, worked for four (4) years at J. Frank Blakely as an electrician
- worked for two (2) years at Sara Lee as a plant maintenance electrician
- worked for four (4) years as a maintenance mechanic/electrician for Georgia Pacific.
- at Georgia Pacific, learned how to assist in tool changes, perform preventative maintenance tasks, and how to interface with PLC's (Programmable Logic Controllers), the computer interface used on the Kiefel machine
- worked for two (2) years at Glotex, where he served as maintenance supervisor and plant electrician
- In March 2006, left Glotex for a temporary position working for a staffing company, Aerotek, in Faurecia's Maintenance Department
- while working in the Maintenance Department, assisted in tool changes in the

16

Vac-Form department and performed modifications on presses for the setup of Faurecia's new E-70 program for the X-5

(Grimes Dep. at 7-9, 11, 12-13, 15-17, 25; Smith Dep. at Ex. 18; Denton Decl. at ¶ 17; Clark Dep. at 7-8.).

The defendant claims that the new E-70 line was in the start-up phase and that it considered Grimes' mechanical and electrical experience to be paramount. (Denton Decl. at ¶ 9).

### 3.     *Candidate Comparison*

There exist two principle differences between the plaintiff and Grimes that raise concern for the Court and ultimately genuine issues of fact.  The first is that Grimes has worked almost exclusively as an electrician for his entire career and if he has significant automotive and manufacturing experience, the defendant has not efforted to explain it. The plaintiff by contrast has eleven years of automotive experience, specifically in the Vac-Form department where the Process Technician position was available. It is undisputed that the plaintiff has operated the essential machinery over a much longer period of time and has actually performed supervisory responsibilities within the Vac-Form department. (See Smith Dep. at 93, 108-10.)  The defendant attempts to diminish the relevance of such experience but simultaneously highlights comparable experience in support of Grimes - to wit, his experience with the Kiefel computer interface.  What portions of either resumes constitute manufacturing experience is not clear to the Court.  It appears that the two individuals otherwise have comparable educational backgrounds.

The second concern relates to the individuals' relative tenure with the defendant. While, generally speaking, tenure of service with an employer or length of experience

17

would bear no specific relation to qualification, *see Heiko*, 434 F.3d at 261 (stating that

"greater management expertise due to her previous jobs at other banks and her role in the

Mortgage Operations Department" does not "conclusively reveal[ ]" a non-discriminatory

basis to compare the relative qualifications of the candidates); *Anderson v. Westinghouse

Savannah River Co.*, 406 F.3d 248, 269-71 (4th Cir. 2005), in this instance, the two are

difficult to separate.   The plaintiff's tenure seems precisely related to accumulating

experience and qualification for the job applied for, whereas Grimes did not work for the

defendant and did not, by all accounts, work for another employer performing comparable

industry.   In spite of the direct experience the plaintiff acquired with the defendant over

eleven years, the defendant hired Grimes whose resume does not speak to his

qualification for this specific position in any apparent way.

To aggravate this consideration, the defendant has a policy which states that

"[w]hen possible, FIS will try to fill job openings from within using the posting process, if

qualified internal applicants are available."[2]  (Pl. Resp. Attach. 14 at 43.)  At the time of his

promotion, Grimes had been with the defendant less than 6 months but only as a

temporary employee placed by a staffing company, Aerotek.  (Grimes Dep. 15-17.)  Taken

together – that is the policy preferring internal applicants and the plaintiff's tenure of

---

[2]  The defendant highlights that this policy is qualified by the phrase, "unless outside recruitment is considered to be in [Faurecia's] best interest."  (Def. Reply at 8.) The Court has not been able to locate this language in either of the handbooks submitted by the plaintiff (Pl. Resp. Attachs. 13, 14) but does not question the defendant's representation.  Such a notion is reasonable and would be necessarily implicit if it were not express.  More importantly, the jurisprudence surrounding Title VII already incorporates this notion, insofar as it would be a rare case where it could be concluded that it was in the "best interest" of an employer to reject a candidate who was "demonstrably superior" in qualification to the one selected.

18

relevant service, some greater explanation than the one offered would seem in order to justify promoting an electrician, not directly employed by the company, over an actual employee of the company with arguably longer and more relevant experience. The Court may be oversimplifying the truth of the evidence before it but on the record as presented a reasonable jury might summarize the query in exactly that way.

The Court will not call it – the degree of disparity between the qualification of the two employees, if any. But based on the record as it stands, a juror could reasonably conclude, in light of the job posting, that an individual who had worked for an employer in its Vac-Form department for eleven years, run relevant machinery and operations, and who had performed supervisory responsibilities would be demonstrably superior in qualification to an individual who had performed work almost exclusively as an electrician outside of the automobile parts industry. If Grimes' experience as an electrician has given him comparable or superior qualifications, as well may be the case, the defendant has not explained it or produced evidence eliminating that issue of fact. The defendant states a number of times that "[b]ecause the new E-70 line was in the start-up phase, Faurecia considered mechanical and electrical experience to be paramount." (Denton Decl. ¶ 9.) Neither of those requirements, however, appear in the job posting in any respect. Moreover, the defendant makes no real effort to explain why such considerations are so essential. For the most part, the defendant has relied substantially on what it would characterize as a poorly developed case by the plaintiff, insofar as it argues that he is ignorant of the particular criteria used to make the decision. The plaintiff's evidence, however, at least in this regard, is sufficient to create at least a genuine issue of fact as to the degree of disparity, if any, between the plaintiff's and Grimes' qualifications. Under the

19

circumstances, a jury might very well be justified in rejecting the defendant's articulated explanation for why Grimes was more qualified and conclude that the plaintiff's qualifications were demonstrably superior.

As previously discussed, evidence that a candidate with demonstrably superior qualifications was rejected for an individual, outside the protected class and of inferior qualification, raises an inference that the decisionmaker was compelled by a discriminatory motive. *See Heiko,* 434 F.3d at 261. That inference, however, is somewhat negated where, as here, another individual also outside of the protected class, and with arguably superior qualifications than the individual selected, is also denied the promotion. *See Sherman v. Westinghouse Savannah River Co.*, 2008 WL 344698, at *9 (4th Cir. February 7, 2008); *Blue v. U.S. Dep't of Army*, 914 F.2d 525, 541 (4th Cir.1990). The Fourth Circuit in *Sherman* and *Blue* emphasized that where a promotion decision has the effect of unfairly prejudicing black and white applicants alike, it tends to negate any inference that the decision was made on account of race: " While such preselection might demonstrate that Sherman and the other applicants were "'unfairly treated, it does not by itself prove racial discrimination.'" *Sherman*, 2008 WL 344698, at *9. In *Blue*, the court stated that "[i]f one employee was unfairly preselected for the position, the preselection would work to the detriment of all applicants for the job, black and white alike." *Blue*, 914 F.2d at 541.

Here, it is undisputed that Chad Pace, a white applicant, was also denied the promotion, notwithstanding the fact that he had worked for the defendant since 2001 in the Vac-Form and Door Panels departments. (Def. Ex. D, Bell Decl. ¶¶ 10-12.) While not identical, Pace's qualifications are more of the quality and kind of the plaintiff's than

20

Grimes'.  If the plaintiff is demonstrably more qualified than Grimes, then Pace may well have been too.  In that case, the defendant's decision to select Grimes over Pace would have no tendency to suggest that race-based considerations were at work because Pace is white.  Thus, while Grimes may have been shown favoritism or given unfair advantage for some other reason or reasons, Pace's rejection begins to erode the plaintiff's argument that a differential in qualifications is necessarily evidence of racial pretext.  "Title VII does not ensure the best will be selected - only that the selection process will be free from impermissible discrimination."  *Blue*, 914 F.2d at 541. (quotations and citations omitted).  "[A]n ill-informed motivation, or even an illegal motivation, is not necessarily a discriminatory one. . . ."  *I*d. (quotations and citations omitted).

The Court, however, does not find *Sherman* and *Blue* dispositive of this case for two reasons.  First, the Court finds that issues of fact remain as to the relative qualifications between the plaintiff and Pace and between Pace and Grimes.  There is only some, but not substantial, evidence of Pace's qualifications in the record.  (Bell Decl. ¶¶ 10-12.)   If Pace is, in fact, not comparably qualified to the plaintiff and, therefore, not similarly situated for purposes of comparison with Grimes, then a jury might still conclude that the decision to hire Grimes over the plaintiff was sufficiently more egregious than the defendant's decision to reject Pace for Grimes, such that an inference of discrimination is still reasonable.

Second, other evidence of pretext arguably exists in this case.  Specifically, the defendant, as stated, has offered a second reason for rejecting the plaintiff, namely that it would be a violation of its Relatives Policy.  The plaintiff, however, has submitted evidence that the policy has not been enforced with consistency in regards to other white

21

couples, including Jacob and Isabella Clark, Ron and Bianca Raynor, and Tom and Lori Morgan.  (Pl. Resp. Attach. 16 (Pl. Aff.) ¶ 37, Attach. 17 (Smith Aff.) ¶¶ 9-11; Attach 14 (Clark Dep.) at 18-20.)  The plaintiff contends that each of these couples were allowed to work in the same department.    The Court rejects some of the plaintiff's evidence as probative and accepts others.

As to the Clark's and Raynor's, the plaintiff has not produced any evidence that they ever "work[ed] directly for or supervis[ed] their" spouses, while working in the same department, or that they had the potential to do so, (Smith Dep. Ex. 7 at 000401-000402). *See id.*  In contrast, the defendants have submitted undisputed evidence that there was never any actual or potential supervision of spouses by spouses, in regards to the Clark's. (Clark Dep. at 18-20.)

Concerning the Morgan's, however, a genuine issue of fact remains.  The plaintiff swears in his affidavit that Ms. Morgan was her husband's direct boss.  (Pl. Aff. ¶ 37.)  The defendant rejects that the plaintiff could have any personal knowledge of the reporting relationship between the Morgan's, but that is an issue of fact.  The plaintiff claims that he does have such personal knowledge.  The defendant further argues that the plaintiff has not presented any evidence that the policy was ignored in the Morgans' case specifically on account of the fact that the Morgans are white.  But, that is not the plaintiff's burden to show.  He need not show that the Morgans were necessarily preferenced on account of *their* race but simply that he was disadvantaged on account of his.    Finally, the plaintiff emphasizes that he was asked to work in his wife's department both before and after his request for promotion, in violation of the policy.  (Pl. Aff. ¶¶ 38-39.)  He avers that he inquired about application of the policy and yet was told not to worry about it.  *Id.*  The

22

defendant responds that the plaintiff has produced no evidence that his wife ever supervised him during these temporary assignments and, therefore, the policy had no force. This argument, however, is not consistent with the defendant's articulated reason for denying the plaintiff the promotion – that even the *potential* for supervision is sufficient to raise the ire of the policy.

Based upon the alleged treatment of the Morgan's and of the plaintiff on temporary assignments, the Court finds that a jury could be reasonably be suspicious of the defendant's articulated reason.

Because the Court finds that a reasonable jury would be justified in finding the plaintiff demonstrably more qualified than Grimes and because that same jury would have reason to doubt the sincerity of the application of the Relatives Policy, the plaintiff has created genuine issues of fact as to whether the defendant's legitimate, non-discriminatory reasons for denying him the promotion were merely pretextual.[3] Nonetheless, it is a close call. The plaintiff's evidence is not overwhelming and the fact that Chad Pace, a white male of possibly comparable qualifications, was also rejected is nearly fatal. But the plaintiff's *prima facie* case "combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 147.

As a final comment, the Court would note that the defendant has emphasized the

---

[3] As other evidence of pretext, the plaintiff also argues that Grimes was "handpicked" for the Process Technician job before the plaintiff even had an opportunity to interview for it and that this recruitment is further evidence of racial discrimination. (Pl. Resp. Attach. 27 (Grimes Dep.) at 32.) As stated, however, preselection, even when it is unfair, is not of itself any evidence of discrimination on account of race. *See Sherman*, 2008 WL 344698, at *9; *Blue*, 914 F.2d at 541.

plaintiff's concession that he has no actual evidence that racial discrimination was the reason for his rejection. (Smith Dep. at 153.) But the United States Supreme Court has recognized that such evidence is rarely available. It is precisely for this reason that the *McDonnell Douglas* scheme allows jurors to draw reasonable inferences regarding racial motivations when the justification for an employment action is dubious under the circumstances.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the defendant's motion for summary judgment be denied.

IT IS SO RECOMMENDED.

s/Bruce H.  Hendricks
United States Magistrate Judge

April 18, 2008
Greenville, South Carolina.

24