IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Deidrick Ladonn Smith, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 6:06-3602-HMH-BHH |
| | ) | |
| vs. | ) | |
| | ) | **OPINION & ORDER** |
| Faurecia Interior Systems, USA, | ) | |
| | ) | |
| Defendant. | ) | |

    This matter is before the court with the Report and Recommendation of United States Magistrate Judge Bruce Howe Hendricks, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Deidrick Ladonn Smith ("Smith") alleges racial discrimination pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"). Faurecia Interior Systems, Inc.[2] ("Defendant"), moves for summary judgment. In her Report and Recommendation, United States Magistrate Judge Hendricks recommends denying summary judgment. The Defendant filed objections to the Report and Recommendation. For the reasons stated below, the court denies the Defendant's motion for summary judgment.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit it with instructions. 28 U.S.C. § 636(b)(1) (2006).

[2] The Defendant asserts that it is incorrectly identified in the complaint as Faurecia Interior Systems, USA.

1

I. FACTUAL BACKGROUND

The Defendant manufactures and supplies parts to automobile manufacturers, and maintains a production facility in Fountain Inn, South Carolina. (Def.'s Mem. Supp. Summ. J. Ex. D (Sharon Bell ("Bell") Decl. ¶ 5).) Smith, an African-American male, began his employment with the Defendant in 1995. (Id. Ex. A (Smith Dep. 72-73).) Later that year, he became a production associate in the vac-form department. (Id. Ex. A (Smith Dep. 82).) Throughout his employment with Defendant, Smith was employed in the vac-form department and was eventually promoted to the position of operator on the GMX line for Saturn. (Id. Ex. A (Smith Dep. 97-98) & Ex. E (Keith Denton ("Denton") Decl. ¶ 4).) As of July 2006, the Defendant also employed Smith's wife, who worked as a GAP (team) leader on the vac-form department's E-70 line for the BMW X-5. (Id. Ex. E (Denton Decl. ¶ 5).) Currently, as an operator, Smith is responsible for operating the Kiefel machine on the vac-form line. (Def.'s Mem. Supp. Summ. J. Ex. A (Smith Dep. 102).)

On June 15, 2006, the Defendant posted an internal job opening for two process technician positions. (Id. Ex. A (Smith Dep. 127) & Ex. E (Keith Denton ("Denton") Decl. ¶ 10).) In response to the posting, the Defendant received six applications. (Id. Ex. E (Denton Decl. ¶ 11).) The Defendant received applications from the following persons: Smith; Jacob Clark ("Clark") (white male), a process technician on the paint line in the vac-form department; Jimmy Grimes ("Grimes") (white male), a temporary employee assigned to the Defendant's maintenance department; Kevin Smith (white male), a GAP (team) leader; Chad Pace (white male), a vac-form and door panels operator; Libardo Tarbores (Hispanic); and Antonio Morales (Hispanic). (Id. Ex. E (Denton Decl. ¶¶ 12-13) & Ex. D (Bell Decl. ¶¶ 11-12).)

Jim Anderson ("Anderson"), the vac-form supervisor, and Jim Mulkey ("Mulkey"), the maintenance department supervisor, interviewed the candidates. (Id. Ex. E (Denton Decl. ¶ 15).) Smith alleges that although he was available, Anderson did not interview him until after the decision regarding the positions had been made. (Pl.'s Mem. Opp'n Summ. J. 2.) The Defendant contends that when Anderson and Mulkey began interviewing the candidates, Smith was not at work because of a shutdown of the GMX line. (Def.'s Mem. Supp. Summ. J. Ex. E (Denton Decl. ¶ 16).) However, the Defendant asserts that it considered Anderson's meeting with Smith to be an interview, and that Anderson did not present his findings to Denton, the Defendant's human resources manager at the time, until after he interviewed Smith. (Id. Ex. E (Denton Decl. ¶¶ 20, 22).)

Denton asserts that he was the sole decision-maker for purposes of filling the two process technician positions and that after meeting with Anderson, he determined that Clark's and Grimes's qualifications and experience best suited the Defendant's needs. (Id. Ex. E (Denton Decl. ¶¶ 23, 30).) According to Denton, he did not place Smith in one of the positions because it would have violated the Defendant's Employment of Relatives Policy ("Relatives Policy") because his wife worked as a GAP (team) leader on the E-70 vac-form line. (Id. Ex. E (Denton Decl. ¶¶ 25, 27).) In addition, Denton asserts that even if Smith's promotion had not violated the Relatives Policy, he considered Clark and Grimes as more qualified candidates for the process technician positions. (Id. Ex. E (Denton Decl. ¶ 28).)

Smith filed the instant action on December 22, 2006. On December 20, 2007, the Defendant moved for summary judgment, and Smith responded on January 5, 2008. The Defendant replied on January 14, 2008.

On April 18, 2008, Magistrate Judge Hendricks entered the Report and Recommendation, recommending denying the Defendant's motion for summary judgment. The Defendant filed objections to the Report and Recommendation on May 5, 2008.

## II.  Legal Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). With respect to this burden, "it is the responsibility of the plaintiff, not the court, to identify with

particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion." Malina v. Baltimore Gas & Elec. Co., 18 F. Supp. 2d 596, 604 (D. Md. 1998).

### B. Discrimination

Because there is no direct evidence of racial discrimination, the case is analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973). This framework is as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981) (quoting McDonnell Douglas, 411 U.S. at 802). In satisfying the third step, "the plaintiff must prove '*both* that the reason was false, *and* that the discrimination was the real reason' for the challenged conduct." Jiminez v. Mary Washington College, 57 F.3d 369, 378 (4th Cir. 1995) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)). However, if the plaintiff is able to show by a preponderance of the evidence that the defendant's purported reason is pretextual, then the "plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000).

In his complaint, Smith asserts that the Defendant failed to promote him because of his race. (Compl. ¶ 4.) To satisfy a prima facie case for failure to promote, a plaintiff must demonstrate that "(1) [h]e is a member of a protected class; (2) h[is] employer had an open position for which [h]e applied; (3) [h]e was qualified for the position; and (4) [h]e was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." Taylor v. Virginia Union Univ., 193 F.3d 219, 230 (4th Cir. 1999).

### 1. Prima Facie Case

The Defendant objects to the Magistrate Judge's finding that Smith established a prima facie case of discrimination. (Objections 5.) First, the Defendant asserts that Smith has not established he was qualified for the process technician position. The Magistrate Judge found that the Defendant satisfied this burden by submitting a note prepared by Anderson, his supervisor and interviewer. The note by Anderson states, "I advised [Smith] that he's a good candidate for the job but that he has not had all the experience as the other candites [sic] but with training he might be able to do it." (Pl.'s Mem. Opp'n Summ. J. Attach. 22 (Anderson Note ).) In addition, Anderson states that he informed Smith "that he might be able to work in hotpress as a Tech if the position does come available." (Id. Attach. 22 (Anderson Note).)

The Defendant contends that Anderson's note indicates that Anderson does not believe Smith is qualified, because he would require additional training before being able to perform the job. (Objections 5.) In addition, the Defendant points to Anderson's statement that even with additional training, Anderson may not be able to perform the job. (Id.) Further, the Defendant asserts that Anderson's opinion that Smith could function as a hotpress technician is not evidence

6

that Smith could do so on the start-up E-70 vac-form line, and that Anderson's opinion is irrelevant because he did not decide who would fill the job position. (Id. 5-6.)

The court agrees with the Magistrate Judge that Smith has sufficiently demonstrated that he was qualified for the position. First, as the Magistrate Judge noted, Anderson's note expresses that Smith was a "good candidate" for the job despite reservations that he was not as experienced as the other candidates. (Id. Attach. 22 (Anderson Note ).) While Anderson was not the ultimate decision-maker with regard to the position, he did interview the candidates and presented Denton with the findings from the interviews. Therefore, his opinion of Smith's qualifications is more relevant than a mere co-worker's opinion. "[T]he burden of establishing a *prima facie* case of disparate treatment is not onerous," and Anderson's opinion that Smith was a "good candidate" is certainly enough to satisfy the "relatively easy test" of showing that Smith was qualified for the process technician position. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (internal quotation marks omitted).

Because the court finds that Smith has established a prima facie case, the Defendant has the burden "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. It is undisputed that the Defendant has met this burden. The Defendant asserts that the reasons for Smith's rejection were that Clark and Grimes were better qualified for the position and that Smith's promotion to the position would have violated the Defendant's Relatives Policy. (Def.'s Mem. Supp. Summ. J. Ex. A (Smith Dep. 78).)

## 2. Pretext

Because the Defendant has proffered legitimate, non-discriminatory reasons for its decision, Smith bears the burden of demonstrating "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." See Reeves, 530 U.S. at 143 (internal quotation marks omitted). "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination by showing that the employer's proffered explanation is unworthy of credence." Id. (internal quotation marks omitted).

The Magistrate Judge found that Smith has presented sufficient evidence that the Defendant's stated reasons were pretextual to withstand the Defendant's motion for summary judgment. (Report and Recommendation 13-24.) The Defendant objects arguing that Smith has failed to present evidence of pretext and that it is entitled to summary judgment.

Smith argues that the Defendant's reliance on Grimes's qualifications for placing him in the position is pretext because Smith was more qualified for the position than Grimes. (Pl.'s Mem. Opp'n Summ. J. 6-8.) The United States Court of Appeals for the Fourth Circuit has instructed that if a "plaintiff has made a strong showing that his qualifications are demonstrably superior [than those of the candidate selected for the position], he has provided sufficient evidence that the employer's explanation may be pretext for discrimination." Heiko v. Colombo Sav. Bank, 434 F.3d 249, 261-62 (4th Cir. 2006). Pursuant to this standard, the court finds that Smith has presented sufficient evidence from which a jury could find that his qualifications were demonstrably superior than those of Grimes. Therefore, an issue of fact exists as to whether the Defendant's reliance on Grimes's qualifications for his promotion are pretext.

The following was the posted job description of the process technician position:

Associate Degree in Engineering (or related experience); Previous manufacturing experience; Strong problem solving skills; Computer skills (Windows, Access, Excel, Word, Auto CAD, Project); Automotive experience a plus; Good verbal and written communication skills.

(Def.'s Mem. Supp. Summ. J. Ex. A (Smith Dep. Ex. 17 (Job Description)).)

Smith has produced evidence of the following educational and professional experience:

- graduated from high school
- attended college, but did not graduate
- began working for the Defendant in 1995
- worked in Defendant's vac-form department as prep operator, glue sprayer, glue tech, Kiefel operator, and, for eight weeks, as GAP leader
- able to run every workstation in the vac-form departments
- learned training methods and took time study classes
- excellent skills on the Kiefel machine, the primary machine in the vac-form department, including running the computer, making all tool changes, repairing machine breakdowns
- regularly used as troubleshooter on the Kiefel machine
- at manager's request has been "running" service parts on the Kiefel machine, a task normally performed by a process technician or process engineer

(Pl.'s Mem. Opp'n Summ. J. Ex. 16 (Smith Aff., generally).)  For purposes of comparison, the

Defendant has put forth the following evidence of Grimes's educational and professional

experience:

- began his work career during high school when he worked for his father's commercial electrical business
- continued to work for his father's electrical business until it closed
- worked for various construction companies doing electrical work on projects in Florida, Georgia, Illinois, North Carolina, Pennsylvania, South Carolina, and Tennessee
- first job in a manufacturing plant was in 1989, with Startex Mills in Startex, South Carolina, where he worked as maintenance mechanic
- beginning in 1994, worked for four years at J. Frank Blakely as an electrician
- worked for two years at Sara Lee as a plant maintenance electrician

- worked for four years as a maintenance mechanic/electrician for Georgia Pacific
- at Georgia Pacific, learned how to assist in tool changes, perform preventative maintenance tasks, and how to interface with Programmable Logic Controllers, the computer interface used on the Kiefel machine
- worked for two years at Glotex, where he served as maintenance supervisor and plant electrician
- in March 2006, left Glotex, where he served as maintenance supervisor and plant electrician
- in March 2006, left Glotex for a temporary position working for a staffing company, Aerotek, in the Defendant's maintenance department
- while working in the maintenance department, assisted in tool changes in the vac-form department and performed modifications on presses for the setup of the Defendant's new E-70 program for the X-5

(Def.'s Mem. Supp. Summ. J. Ex. C (Grimes Dep. 7-9, 11, 12-13, 15-17, 25); Ex. A (Smith Dep. Ex. 18 (Grimes Resume)); Ex. E (Denton Decl. ¶ 17); & Ex. B (Clark Dep. 7-8).)

Based on their relative qualifications, the court finds an issue of fact exists with regard to whether Smith's qualifications are demonstrably more superior to those of Grimes.  First, Smith has eleven years of automotive experience, specifically in the vac-form department where the process technician positions were available.  Smith has significant experience working with the Kiefel machine, the primary machine in the vac-form department, and has performed supervisory responsibilities during his employment in the department.  Further, Smith asserts that pursuant to his employment, he has actually performed at least some of the functions of the process technician position.  Smith's tenure and experience with the Defendant seem to precisely relate to accumulating qualifications for the process technician position in the vac-form, as described in the job posting.

In contrast, Grimes's experience has overwhelmingly been as an electrician.  At the time the Defendant offered him the process technician position, Grimes had only been working for the

Defendant for six months while employed by a staffing company. In addition, none of Grimes's previous positions were in the automotive industry.

The Defendant argues that it was, in fact, Grimes's mechanical and electrical experience that made him more qualified for the job than Smith. The Defendant asserts that "Denton considered mechanical and electrical experience paramount." (Objections 8.) However, the Defendant has not explained why such experience was required and this "paramount" requirement is not listed in the job posting. While an employer is not bound by all of the requirements in a job posting, a jury could reasonably conclude that if mechanical and electrical skills "were indeed essential to the job," the Defendant would have included them in the job posting. Ham v. Wash. Suburban Sanitary Comm'n, No. 04-2021, 2005 WL 3518278, at *8 (4th Cir. Dec. 21, 2005) (unpublished) (citing Courtney v. Biosound, Inc., 42 F.3d 414, 421 (7th Cir. 1994) ("Given [the defendant's] claim that it had placed a 'high premium' on finding an individual who could satisfy its 'unique communication needs,' a reasonable juror could conclude that [the defendant] would have included this qualification in the job listing had it honestly believed that it was of primary importance for the position.")).

In addition, as the Magistrate Judge noted, the Defendant had a policy that "[w]hen possible, [the Defendant] will try to fill job openings from within using the posting process, if qualified internal applicants are available." (Pl.'s Mem. Opp'n Summ. J. Ex. 13 (Employee Handbook 43).) Based on this policy coupled with Smith's apparently superior qualifications for the position as described by the job posting and experience in the position's department, a jury could find that the Defendant's asserted reliance on Grimes's mechanical and electrical

experience was pretext. Therefore, the court finds that an issue of fact exists with regard to whether Smith's qualifications are demonstrably superior to those of Grimes.

In addition to the relative qualifications of Grimes and Smith, the Defendant also asserts that Smith was not promoted to the position because it would have violated the Defendant's Relatives Policy. (Objections 14.) The Defendant claims that Smith's employment in the process technician position would have violated the policy because Smith's wife is a GAP leader in the E-70 vac-form department and if he had been promoted to the position, Smith and his wife would have worked on the same line and in the same area of the plant. (Def.'s Mem. Supp. Summ. J. 9-10.) Smith does not dispute that his employment in the position would have violated the Relatives Policy, but claims that because other white employees are currently employed by the Defendant in violation of the policy and because he has performed temporary assignments in his wife's department, the Defendant's reliance on the policy is disingenuous and pretextual. (Pl.'s Mem. Opp'n Summ. J. 8.)

The Magistrate Judge found that Smith had presented sufficient evidence that two white employees, Tom and Lori Morgan, were employed in violation of the Relatives Policy because Lori Morgan was Tom Morgan's direct supervisor. (Report and Recommendation 22.) To refute this allegation, the Defendant could have come forward with an affidavit contradicting Smith's assertion, but has not done so, and Smith's concession that they worked in different departments does not necessarily preclude the possibility that Lori Morgan was Tom Morgan's direct supervisor. Further, Smith claims that he has personal knowledge of this relationship and, the court cannot find, as the Defendant argues, that Smith's employment at the same company would not give him access to this information. Finally, the Defendant does not dispute that Smith has

been asked to work in his wife's department both before and after his request for promotion. Smith claims that when he asked about a potential violation of the Relatives Policy, he was told not to worry about it. (Pl.'s Mem. Opp'n Summ. J. Ex. 16 (Smith Aff. ¶¶ 20, 38-39).) Based on these facts, the court finds that it is possible that a jury could reasonably infer that the Defendant's reliance on the Relatives Policy is merely pretext and an issue of fact exists on this issue. Therefore, the court finds that Smith has presented sufficient evidence of pretext to withstand the Defendant's motion for summary judgment. Based on the foregoing, the court adopts the Magistrate Judge's Report and Recommendation and the Defendant's motion for summary judgment is denied.

Therefore, it is

**ORDERED** that the Defendant's motion for summary judgment, docket number 62, is denied.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
May 15, 2008